J-S31027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.A.W.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.J.E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 101 WDA 2017 |

Appeal from the Order August 26, 2016
In the Court of Common Pleas of Westmoreland County
Orphans' Division at No(s): 54 of 2015

BEFORE: PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 17, 2017**

L.J.E. ("Father") appeals from the Order entered on August 26, 2016, terminating his parental rights to R.A.W.A. ("Child"), born September 2012.[1] We affirm.

The Allegheny County Court of Common Pleas Juvenile Court adjudicated the Child dependent on November 27, 2013, due to Mother's drug abuse and housing concerns. Father was incarcerated at the time.[2] Mother retained physical custody of the Child, and when Mother moved to

---

[1] Mother's parental rights were also terminated but she is not part of this appeal.

[2] Father's paternity was established after a paternity test.

Westmoreland County, the matter was transferred to Westmoreland County for disposition.

On March 3, 2014, after a hearing, the Westmoreland County court adjudicated the Child dependent due to Mother's drug addiction, housing concerns, and her inability to supervise the Child properly. The court immediately transferred legal and physical custody of the Child to the Westmoreland County Children's Bureau ("WCCB"), and directed Father to contact the WCCB to be assessed for services. WCCB placed the Child in the same foster home as his two older siblings,[3] and developed a permanency plan with a concurrent goal of return to parent and adoption.

The court held a permanency review hearing on September 15, 2014, in which it noted that Father had been provided notice of the review hearing at prison, but he had apparently been released and had not provided the WCCB with an address. The court further noted that Father never participated in any prior hearings. *See* Permanency Review Order, dated 9/15/14, at 1. The court again ordered Father to contact the WCCB to be assessed for services. *Id*. at 3. The Child remained in foster care due to Mother's minimal compliance with the permanency plan and her continued drug use.

_____

[3] Child's two siblings have been in foster care since December 2011.

After a permanency review hearing held on December 22, 2014, which Father did not attend, the court noted that Father had had successful supervised visits with the Child in October 2014, but had since moved to a different halfway house and had not contacted WCCB to arrange visits or services. The court ordered the WCCB to offer Father supervised visits with Child twice per month, and directed Father to complete parenting classes, comply with random drug screens, and obtain and maintain housing and a legal source of income.

After a permanency hearing on March 16, 2015, which Father did not attend, the court observed that Father had minimally complied with the permanency plan in that he did have his own housing and legal employment, but he had missed some random drug screens. Further, the court observed that Father had attended only two visits with the Child during the three-month review period.

On June 8, 2015, the WCCB filed Petitions to Involuntary Terminate both Mother's and Father's Parental Rights. Both Mother and Father were served with the Petitions to Terminate their parental rights.

After a permanency review hearing on June 22, 2015, the court found that Father had not had any communication with the WCCB since mid-May 2015. Prior to mid-May 2015, Father had visited with the Child only sporadically. The court also noted that Father had not complied with random drug screens, and that his housing and income were uncertain. Further, the parole department had issued a warrant for Father's detention.

On September 3, 2015, January 4, 2016, and April 27, 2016, the court held additional permanency review hearings, none of which Father attended. After each, the court noted that Father had had no contact with the WCCB in the review periods, and had not complied with the permanency plan.

On April 27, 2016, and July 14, 2016, the court held a hearing on the Petitions to Terminate Parental Rights. Father did not appear. Emily Surace, the family's caseworker at the WCCB, testified that (1) Father has never had custody of or lived with the Child; (2) from October 2014 to May 2015, Father had attended only 11 supervised visits with the Child although WCCB encouraged one visit per week; and (3) since May 2015, Father had not seen or communicated in any manner with the Child. *See* N.T. Hearing 7/14/16, at 22-23. Ms. Surace further testified that Father plays no role in the Child's life and there would be no harm to the Child's needs and welfare in terminating Father's parental rights. *Id*.[4]

Ms. Surace further testified that the Child is doing very well with the foster/pre-adoptive parents where, at the time of the hearing, he had lived for twenty-eight of the forty-five months of his life. The CASA[5] worker

---

[4] Ms. Surace also testified that Father had not attended any review hearings or the adjudication hearing and at the time of the termination hearing, there was a bench warrant for his arrest for failure to pay child support.

[5] Court Appointed Special Advocate.

informed the court that the Child "is thriving now. He has stability and he is doing quite well." *Id*. at 31.

On August 26, 2016, the court entered an Order terminating Father's parental rights to the Child based on 23 Pa.C.S. § 2511(a)(2)(5), and (8) and (b).

On October 28, 2016, Stephen M. Crevak, Esq., filed a Petition on Father's behalf seeking Leave to File a Motion for Reconsideration. Counsel averred that he had been appointed to represent Father in connection with a permanency review hearing on July 26, 2016, and that it was not until October 17, 2016, that he and Father learned that Father's parental rights had been terminated in August 2016. The court scheduled a hearing on the Petition for Reconsideration and appointed Eric Dee, Esq., as counsel.

On January 4, 2017, after a hearing, the court granted Father twenty days to file a Notice of Appeal *nunc pro tunc* from the August 26, 2016 Order "due to a breakdown in court operations, whereby Father did not receive notice of the order terminating [his] parental rights." Order of Court, 1/4/17. Father filed his Notice of Appeal on January 11, 2017, together with a concise statement of errors complained of on appeal, as required by Pa.R.A.P. 905(a)(2) and Pa.R.A.P. (a)(2)(i). The trial court filed a Rule 1925(a) Opinion.

Father presents the following issue for our review:

> Whether the trial court erred in finding by clear and convincing evidence that the Westmoreland County Children's Bureau met

its burden, under 23 Pa.C.S. § 2511(b), that the best interest of the Child is met by terminating Father's parental rights?

Appellant's Brief at 4.[6]

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result. *Id.* at 826-827.

The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing

---

[6] In his Rule 1925 statement, Father challenged the court's findings made pursuant to 23 Pa.C.S. §2511(a). However, Father has abandoned those challenges as they are not raised in his appellate Brief. Challenges to the trial court's subsection(a) findings are, thus, waived.

evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

A parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

Most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *Id.*

Father avers that "a bonding assessment was not performed nor was there any testimony offered regarding the bond or lack thereof between the [C]hild and Father." Father's Brief at 6. He then acknowledges that the court was not required to conduct a bonding assessment before stating "the record should not be devoid of any testimony regarding whether a bond exists between Father and child." *Id*.

As Father has abandoned his challenge to the statutory grounds provided in Section 2511(a) supporting the termination, his appeal implicates only the trial court's finding regarding the child's needs and welfare.

Section 2511(b) provides:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has stated:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* **However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.** *In re K.Z.S.,* 946 A.2d 753, 762–63 (Pa. Super. 2008). **Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.** *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (emphasis added).

- 8 -

In addition, "the trial court should consider the importance of continuity of relationship and whether any existing parent-child bond can be severed without detrimental effects on the child." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citation omitted).

Contrary to Father's implication, there was testimony presented that demonstrated that there is no relationship between Father and the Child. The testimony, as summarized above, was that (1) Father had minimal, sporatic, supervised contact with the Child over one six-month period immediately following Father's release from incarceration; (2) Father sent no cards or letters to the Child and made no attempt to contact the Child by phone; and (3) Father provided no financial support for the Child.

Moreover, Father does not dispute that he has never lived with or cared for the Child. He also does not dispute that he had only eleven visits with the Child during the review period, and has not seen the Child since May 2015. Further, he does not dispute that he has not provided any financial support for the Child.

It is, thus, reasonable to infer under the facts of this case that no bond exists between Father and the Child.[7] Hence, terminating Father's parental rights would not harm the child's developmental, physical, and emotional needs and welfare.

_____

[7] The testimony also demonstrated that the Child was thriving in his pre-adoptive home where he has lived most of his life with his siblings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2017